TOM AND AMANDA GREEN v. GRAND UNITED ORDER OF ODD
FELLOWS AND CLARA GREEN.

No. 2314.   Decided February 11, 1914.

**1.—Fraternal Benefit Society—Persons Entitled to Benefit—Designation by Insured.**

Under the Act of May 12, 1899, Laws, 26th Leg., p. 195, the enumeration, in section 1, of the persons to whom death benefits are payable as "the families, heirs, blood relatives, affianced husband or wife, or persons dependent on the member at the time of his death," does not prohibit the insured member from designating any one of either of the classes mentioned as the beneficiary named in his certificate and to whom such payment should be made on his death.   Such right of designation is recognized by section 11 of the Act, which exempts the benefit secured from liability for the debts of the "beneficiary named in such certificate."   (All Justices concurring.)   (Pp. 227, 247.)

**2.—Benefit Society—Construction of Fundamental Laws.**

The provisions of the charter, constitution and by-laws of a fraternal benefit society with regard to the right of insured to designate the beneficiary of his insurance certificate are to be liberally construed to give effect to the humanitarian purposes of the association.   (By Mr. Justice Hawkins.)   (Pp. 228, 229.)

**3.—Benefit Society—Designation of Beneficiary.**

Unless restricted by the charter, constitution, or by-laws of the order or by the statutes of the State, one taking out life insurance in a fraternal benefit society may designate whomsoever he pleases as the beneficiary.   (By Mr. Justice Hawkins.)   (P. 228.)

**4.—Same—Statutory Restriction.**

The designation by statute of the persons to whom the death benefit secured by the certificate of a fraternal benefit society shall be paid (Act of May 12, 1899, Laws, 26th Leg., p. 195) does not exclude the previously settled liberal construction by which the insured was permitted to designate the beneficiary within the limits permitted by the regulations of the State and of the society.   (By Mr. Justice Hawkins.)   (Pp. 231-239.)

**5.—Same.**

The designation by statute of the persons to whom payment should be made of the amount secured in a fraternal beneficiary society on the death of the insured (Act of May 12, 1899, Laws, 26th Leg., p. 195, sec. 1) is not to be held a statute of descent and distribution.   The enumeration of permissible beneficiaries merely defines the sphere of operations of the association, permitting the insured, if not prohibited by the regulation of the society, to designate as beneficiary any person falling within any one of the five classes enumerated in the statute, without reference to the order in which they are there named.   (By Mr. Justice Hawkins.)   (P. 238.)

**6.—Statutory Construction—"Or."**

Direction that a payment be to one or to another, of several named, is complied with by a payment to either, without preference.   (By Mr. Justice Hawkins.)   (P. 233.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Fayette County.

*H. S. Marshall,* for appellants.—A member of fraternal beneficiary association has the right to designate as his beneficiary any person com-

ing under either class named in article 2542a of the Revised Civil Statutes of the State of Texas, as enacted by the Legislature of 1899, page 195.   Article 2542a, Rev. Stats.; Grand Lodge C. K. of P. v. Mackey, 104 S. W., 907; Gray v. Woodmen of the World, 47 Texas Civ. App., 709; Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S., 457; Wilton v. New York Life Ins. Co., 34 Texas Civ. App., 156; Menovsky v. Menovsky, 19 Pa. Sup. Ct., 427; Dennis v. Modern Brotherhood of America (Mo.), 95 S. W., 967; Gillan v. Dale, 69 Kan., 362.

*John T. Duncan,* for appellees.—The Statute of 1899 passed by the Legislature of Texas governing fraternal beneficiary associations, constitutes the law of descent and distribution as it relates to the benefit fund of the association and that the benefit fund must go to the persons or classes of persons designated in that law and in the order in which they are designated.   This interpretation is supported by that part of section 1 which declares: "and should there be no one of the classes herein mentioned capable of taking the benefit at the time of the death of the member, then the same shall pass as provided by the by-laws and rules of the association."   This declaration clearly implies that the laws and rules of the association are to have no force or effect, unless the member dies and leaves no family, no heirs, no blood relatives, no affianced husband or affianced wife nor persons dependent upon him. The issuance of a benefit certificate to the deceased member payable at the date of the death of the member to a certain one of the classes mentioned in the statute, could have no greater effect or power than the laws and rules of the association.   The law of 1899 makes no provision for the issuing of any benefit certificate and makes no provision requiring it to be made payable to anyone and there is no provision of this law that authorizes a member to change the designation of the beneficiaries as provided for by the law.   In this position we are fortified by the law on fraternal beneficiary associations passed by the Legislature in 1909, approved May 1, 1909.

Mr. JUSTICE HAWKINS delivered the opinion following:
The Court of Civil Appeals for the Third Supreme Judicial District has certified for our decision two questions which, with its statement of the case, are as follows:
"An opinion has heretofore been rendered in this case by the Court of Civil Appeals for the Third Supreme Judicial District, as appears from a certified copy thereof hereto attached.   Said cause is now pending in this court on a motion for rehearing, and appellees have filed a motion asking us to certify to your honorable court the questions herein below stated, the answers to which will be decisive of this case.   This case being an appeal from a County Court, by reason of which no writ of error will lie, and the issue being of importance to all fraternal beneficial societies in this State and to parties situated as are the parties herein, and liable to arise at any time in the future, we have deemed it expedient to grant said motion and to certify said questions.

"The Grand United Order of Odd Fellows is a fraternal beneficiary society, as defined by section 1 of the Acts of 1899, page 195, title 49a, Sayles' Sup. R. S. Said order issued to Oscar Green a beneficiary certificate for $500, payable to his father and mother, Thomas and Amanda Green. Subsequently said Oscar Green married Clara Green, and died without having made any change in said certificate, the same being in good standing at the time of his death. The said Oscar Green left surviving him his said wife, Clara Green, and a child born to said marriage, and his father and mother, the said Thomas and Amanda Green. Thomas and Amanda Green claim said $500 by reason of being the beneficiaries named in said certificate; Clara Green claims the same by reason of the fact that she and her said child are the surviving family of said Oscar Green. The issue thus raised involves the proper construction of the Act above refered to, and we certify the following questions:

"1. Do the words in section 1 of said act, 'Payment of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife, or to persons dependent upon the member at the time of his death,' limit the class from which the insured may select a beneficiary, or do they constitute a statute of descent and distribution, requiring payment to be made to said parties in the order named, regardless of the designation made in the certificate by the insured?

"2. Under the facts above stated, to which of said claimants should said order pay said sum?"

The foregoing certificate was filed prior to the taking effect of the statute of 1913 affecting the jurisdiction of this court.

The opinion attached to the certificate need not be here set out at length. We will treat said opinion as part of the certificate; but the better practice would be to set out all the material facts in the body of the certificate from the Court of Civil Appeals.

From said opinion it appears that the benefit certificate in favor of the parents, proceeds of which are in controversy, was issued while our statute of 1899 relating to fraternal beneficiary associations was in force (Acts 1899, p. 195), the member, Oscar Green, being then a single man; that after his death, in good standing, the benefit certificate in favor of his parents having never been changed, but being upon its face and the records of the association in full force and effect, the association, without knowledge or notice of the fact that the widow would claim the benefit fund for herself and child, paid to said parents $250, same being half of said fund; that subsequently, upon learning of said claim of the widow, the association filed in court its bill of interpleader against the parents and the widow, setting out the facts, and praying that they be required to interplead in said cause, and that it be permitted to deposit the remaining $250 of the fund in the registry of the court and retire from the cause, and did so deposit said balance; that the parents and widow having answered, the trial court rendered judgment for the widow against the association and also against the parents for said

deposit, and against the parents for the $250 which they had previously so received. It seems that the child was not made a party, and, was not mentioned in said judgment. The parents appealed. The contest is, therefore, in reality, between said parents, claiming as such designated beneficiaries, on the one hand, and, on the other hand, the widow, claiming that she and her child together constitute the "family" of the deceased member and are, consequently, entitled to the entire benefit fund of $500.

Certainly, under the terms of the contract for this death benefit the beneficiaries therein named, Thomas and Amanda Green, parents of the member, Oscar Green, became entitled, upon their son's death to recover the entire amount of $500 named in the certificate, unless the designation of them as beneficiaries was in contravention of the statute or the charter or constitution, or some by-law, of the association. In all such matters a liberal rule should be observed, to give effect to the humanitarian purposes of the association, which, unlike a trading corporation, is not operated for profit.

Among the authorities in support of that rule are the following: "In determining whether the beneficiary designated by the member in a given case is capable of taking the fund under the charter of the association the courts will give as broad and comprehensive a meaning as possible to the terms of the charter in which the general object of the association and the class of persons to be benefited are set forth. Niblack on Benefit Associations, sec. 160. This principle was recognized by our Supreme Court in Maneely v. Knights of Birmingham, 115 Pa. St., 305." Compton's Estate, 25 Pa. Sup. Ct., 34, decided April 18, 1904.

Walter v. Hensel, Administrator, 42 Minn., 204, 44 N. W., 57, decided December 24, 1889, was a suit for proceeds of a benefit certificate issued by the Odd Fellows Mutual Benefit Society, and turned upon the construction to be given to the articles of association and by-laws. In deciding it the court said: "Where the language is ambiguous or inaccurate, and reasonably susceptible of two interpretations, it should be construed most favorably to the right of designation."

In a Wisconsin case it was said: "In determining who is entitled to receive the benefits of the provisions made by a society of this kind it is the duty of the court to construe its rules and regulations liberally to effect the benevolent purposes of the order, and in no case so to construe them as to defeat such purpose, unless the meaning of such rules and regulations is so clear and certain as to admit of no other reasonable construction." Ballou v. Gile, 50 Wis., 614, 7 N. W., 561, decided December 17, 1880.

With regard to mutual benefit societies it is generally held that if there be nothing in the charter or constitution or by-laws of the organization, nor in the statutes of the State, restricting the appointment, the member may designate whomsoever he pleases, and no one can question the right. Union Fraternal League v. Walton, 109 Ga., 1, 46 L. R. A.,

427, 77 Am. St., 350, 34 S. E., 317; Knights of Honor v. Watson, 64 N. H., 517, 15 Atl., 125, 1 Bacon, Ben. Soc., sec. 246.

Prior to the adoption of our statute of 1899 the decisions of various appellate courts of this State, in cases which were not controlled by statute but which involved constructions of rules of fraternal orders, as reflected in their charters, constitutions and by-laws, had recognized and applied the rules announced above, a fact which will aid us in determining whether said statute was designed to change those rules in this State. Among such decisions were the following:

Splawn v. Chew, 60 Texas, 532, decided December 14, 1883, was a case in which the benefit certificate from the American Legion of Honor was issued in 1880, naming as beneficiaries the father and mother of the member, Chew, who afterward, by will, undertook to change the beneficiaries and to designate his two minor children instead of his parents, interest on the proceeds to go to support of his wife during widowhood. The by-laws provided that the member might designate his beneficiaries, as he did originally, and that the member might surrender such certificate and obtain a new one carrying a different designation of beneficiaries, upon payment of a fee of fifty cents. Held: Said plan for change of beneficiaries was not exclusive; the association having paid over the money to a stakeholder, and the suit for it not being between the claimants and the association, and the latter not having questioned the manner in which the change of beneficiaries was made, the parents were not entitled to recover the fund.

Hanna v. Hanna, 10 Texas Civ. App., 97, 30 S. W., 821, decided March 21, 1895. In December, 1889, the Locomotive Engineers' Mutual Life and Accident Association issued to Silas Hanna three death benefit certificates, directing that payments thereon be made to his mother, and they were drawn payable to her or "his lawful heirs," and delivered to her. She paid all the assessments thereon, and, after his death, collected from the order the full amounts called for by the three certificates, claiming same in her own right as the designated beneficiary. The by-laws of the order declared its object to be "to aid and benefit the families of deceased members of the brotherhood in a simple and substantial manner," and provided that in reporting the death of a member the division secretary should "give the name and residence of the widow or heirs of the deceased to whom the insurance is payable." The contest was between the widow—who sued for the benefit of herself and child—seeking to recover against the mother as trustee of the fund. Held: The mother was ineligible, not being within either of the enumerated classes, and that the wife and child were entitled to the fund, with directions that the child be made a party, and their relative rights determined. The opinion, which was rendered by Associate Justice Garrett, recognizes the right of the member to designate as his beneficiary anyone within either of the classes mentioned in the rules of the order.

West v. Grand Lodge A. O. U. W. of Texas, 14 Texas Civ. App., 471, 37 S. W., 966, decided October 7, 1896. This was a case in which the

administrator of a deceased member, Cleghorn, a white man, sued the association for an amount alleged to be due on a benefit certificate issued to him on May 7, 1883. The negro mistress of the deceased member intervened, claiming the fund under an attempted assignment thereof, which Cleghorn had undertaken to make to her in pursuance of privileges extended to him by the association's by-laws, section 4 of which provided:

"Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, *be one or more members of his family, or someone related to him by blood, or who shall be dependent upon him.*" Its date is not shown.

It seems that when the certificate issued the by-laws required that it be payable to the member's order; but by the terms of Cleghorn's application for membership he became bound by the by-laws, present and future. The by-laws also provided, that, should there be no one living at the death of the member entitled to said benefit, it shall revert to the beneficiary fund of the supreme lodge. In consideration of her personal services in taking care of him, and the fact that she became his mistress, Cleghorn executed a written order directing the association to pay her the full amount of the benefit under its certificate in his favor.

Held: The benefit fund was no part of Cleghorn's estate, hence the administrator could not recover; the woman not being within any of the classes specified in section 4 of the by-laws, and not being a "dependent," because the contract between Cleghorn and her was one of prostitution, and therefore void, could not recover; and the benefit fund reverted to the association. While the right of the member to designate his beneficiary in compliance with said by-law was not made an issue in the case, the opinion, which is by Associate Justice Fly, assumes that the member had a valid right, under the by-law, to designate as his beneficiary anyone within the classification therein made.

Grand Lodge Order of Sons of Hermann v. Iselt, 37 S. W., 377, decided October 22, 1896. The opinion of the Court of Civil Appeals was delivered by Associate Justice Williams, afterward a member of this court. The charter stated the purpose of the order to be, among other things, "in case of death to insure pecuniary relief to the widow, orphans, or legatees of the deceased members." The charter further provided that in case of death of a member a certain sum should be paid to the person or persons designated as beneficiary in the application for membership. Held: That the charter must be construed as restricting the choice of a beneficiary to a person or persons of one of the classes named in the charter. The decision was distinctly based upon the fact that the beneficiary named was a brother of the member and "did not belong to any class mentioned from which the beneficiaries were to be taken." In said opinion we find the following:

"In benevolent orders of this sort the benefits provided for are generally restricted to classes of persons designated in the constitution, charter or by-laws, and such is the case here. The member may desig-

nate his beneficiary, but he must make his selection from among those whom the charter permits to receive the benefit. We are not unmindful of the general rule that unless it is forbidden by law, or by the charter or constitution of the association, the person insuring his own life may select and appoint any person as beneficiary. But in order that this may be so the association, when incorporated, must have power conferred upon it by its charter to grant such benefits, and to devote its funds to their discharge; and, when the classes of persons in whose behalf such obligations may be assumed are specified in the charter, the member is restricted in his choice to persons belonging to the named classes."

An exception to the general rule above mentioned, which permits the member to designate his beneficiary when no inhibition is made by the order itself, or by the statute, is sometimes insisted upon, on the ground that the contract is against public policy, and therefore void, in cases where the designated beneficiary is thought not to have an insurable interest in the life of the assured. But even that exception is, by many courts, considered inapplicable to death benefit certificates issued by mutual benefit associations. Masonic Ben. Assn. v. Bunch, 109 Mo., 560, 19 S. W., 25. But no such question has been raised, or inheres, in this case, the designated beneficiaries being the parents of the member.

The questions submitted to us are, therefore, to be determined under said general rule; and, inasmuch as the designation of beneficiaries is not shown to have been obnoxious to the charter, constitution or by-laws of the association, and said opinion shows that all parties agreed in the trial court that the issues should be determined by the construction to be given to said statute of 1899, and the Court of Civil Appeals, as well as the trial court, acted upon that view of the matter, we assume that the contract which is before us was in harmony with said charter, constitution and by-laws. Consequently, the validity or invalidity of that contract must here be determined solely by a construction of said statute, which took effect in August, 1899. Its more material portions are as follows:

The caption of the Act defines its general purposes thus: "An Act to define and regulate fraternal beneficiary societies, orders or associations; to prescribe the terms and conditions on which such societies organized under the laws of other States, or those doing business in other States, may be permitted to do business in Texas, and to define the duties of the Commissioner of Insurance of this State in relation thereto; providing for the incorporation of such societies, and declaring an emergency."

Section 1 defines a fraternal beneficial association, provides that each shall have a lodge system, etc., "and shall make provision for the payment of benefits in case of death," and may make provision for payment of benefits in certain other specified classes of instances, and provides how the benefit fund and also how the general fund shall be raised, and then provides: "Payment of death benefits shall be to the *families, heirs, blood relatives, affianced husband or affianced wife, or to persons*

*dependent upon the member at the time of his death,* and should there be no one of the classes herein mentioned capable of taking the benefit at the death of the member, then the same shall pass, as provided by the laws and rules of the association."

Section 11 reads thus: "The money or other benefits, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under the provisions of this Act, shall not be liable for the debts of the beneficiary or holder of any certificate, and shall not be subject to garnishment or other process at the suit of any creditor, nor shall it be taken, seized, appropriated or applied by any legal or equitable process or by operation of law to the debts of the certificate holder or any beneficiary named in such certificate or any person who may have any rights thereunder."

In juxtaposition we quote section 6 of our statute of 1909, which superseded said statute of 1899 and Acts amendatory thereof, and is now in force, and which counsel for appellees insist was intended by the Legislature not only to change the enumeration of classes of beneficiaries under death benefit certificates, but also to expressly confer upon members of such orders a right of designation of beneficiary or beneficiaries neither conferred nor permitted by said statute of 1899:

"Sec. 6. Benefits confined to whom: The payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree ascending or descending, step-father, step-mother, step-children, children by legal adoption, or a person or persons dependent upon the member; provided, that if after the issuance of the original certificate the member shall become dependent upon the charity of an individual or of an institution, he shall have the privilege, with the consent of the association, to make such individual or institution his beneficiary. Within the above restrictions each member shall have the right to designate his beneficiary, and from time to time have the same changed in accordance with the laws, rules or regulations of the association, and no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member. Provided, that any association may, by its laws, limit the scope of beneficiaries within the above classes." Rev. Stats., 1911, art. 4832; Acts 1909, p. 358.

Said statute of 1899 appears to have been the first one enacted in this State defining and specifically regulating fraternal beneficiary associations, or restricting, in any way, the application of their death benefit funds.

Certain portions of said statute of 1899 were amended by chapter 86 of the laws of 1901; chapter 113 of the laws of 1903, and chapter 106 of the laws of 1905; but none of those changes in the statute of 1899 affected any of the above quoted portions of it, or any of the decisions herein mentioned.

In view of the general observance and sanction which had been given, in this State and elsewhere, prior to 1899, to the above stated liberal and reasonable rule of construction, we are loath to depart from it in

this case, the phraseology of our law not being so clear and rigorous as to exclude the idea that the Legislature intended it to be construed in consonance with that rule. But we are unwilling to rest our decision in this case upon that ground alone. We are of the opinion that upon principle and upon authority our statute of 1899 should not be held to be a statute of descent and distribution, but that, in declaring that "payment of death benefits shall be to the families, heirs, blood relatives, affianced husband or wife or persons dependent upon the member at the time of his death," the sole purpose of the Legislature was to merely define the sphere of influence of all fraternal beneficiary associations, whether domestic or foreign, within this State, in so far as payment of death benefits is concerned, leaving every such association entirely free. within such circumscribed limits, to restrict or extend its operation under and in accord with its charter, constitution and by-laws, and leaving every member of every such association absolutely free, within said limits, and subject to the terms and provisions of its charter, constitution and by-laws, to designate a beneficiary or beneficiaries to whom all benefits under his certificate should become payable after his death.

As we understand said statute, its only requirement, in that respect, is that any and every person who may be designated as beneficiary by any member shall belong to at least one of the five enumerated classes. We believe a careful analysis of the entire statute will confirm that conclusion. It will be observed that in said statutory enumeration the connective employed is the disjunctive conjunction "or," and not the conjunctive "and." The plain grammatical effect of the language employed is exactly the same as though the word "or" had been used between each two of the mentioned classes, and such must be its legal effect, in the absence of any and all other language indicating a different legislative intent. Direction that payment be made "to A or B" may be fully complied with by payment to B; or, as well, by payment to A; and the illustration will hold good though the series be extended through the entire alphabet, if the only connective employed throughout the series be the word "or." The proposition is axiomatic.

Turning to section 11 of the Act we find that the exemption from liability for debts is distributive and threefold in its application, thus: (1) Debts "of the certificate holder," meaning the member. (2) Debts of "any beneficiary named in such certificate," meaning, permissibly, some one particular beneficiary who is not merely within some one or more of the five statutory classes, but whose own individual proper name is actually written in the benefit certificate, and that, too, upon designation by or request of the member, since no one else can have or exercise a legal or equitable right to determine to what particular person or persons such certificate shall be drawn payable. (3) Debts of "any person who may have any rights thereunder," evidently meaning some person not included in (1) or (2), and referring to and including any and all persons whose rights in or to the death benefit fund are those of remainderman or remaindermen, "as provided by the laws and rules of the association," under section 1 of the Act. When so construed,

sections 1 and 11 fit like the hand and the glove—their full meaning is developed—and the statute is found to be in harmony with the beneficent purposes of such fraternal orders, and general usage, and practically, if not quite, all the decisions of all the courts.

The history of restrictions upon the application by fraternal orders of their death benefit funds presents a distinct change from internal to statutory regulations, but none in the rules of construction of such regulatory provisions.

"By statute in many jurisdictions and by the charter or by-laws of most societies, the liberal rule allowing a member to designate whom he pleases as beneficiary is abrogated and in nominating a beneficiary the member is restricted to certain classes of persons, such as wife and children, relatives and dependents." 29 Cyc., 107-108.

"While the society may, through appropriate legislation, restrict the classes of persons to whom, by statute or charter, benefits may be paid, it can not enlarge them." 29 Cyc., 109, and cases cited in note 20.

Several such statutes, substantially like ours of 1899 so far as the questions before us are concerned, were enacted in other States prior to the adoption of our statute of 1889, and some of them had been construed by their courts prior to that date.

Menovsky v. Menovsky, 19 Pa. Sup. Ct., 427, arose under section 1 of the Pennsylvania statute of April 6, 1893, relating to fraternal orders and providing that *"payment of death benefits shall be to families, heirs, blood relatives, affianced husband or affianced wife of or to persons dependent upon the member."* That statute makes no express provision concerning designation of beneficiaries. The by-laws of the association authorized each member to designate, by will, a beneficiary. The trial judge held: "It is obvious that the designation of a brother is not prohibited by this statute. . . . It is earnestly and ably argued, however, by counsel for defendants that the constitution and by-laws of the society restricted such designation to a person or persons of the immediate family of the deceased, or to such as would be his 'heirs' as to personalty in case of intestacy. We are unable to accept that view. . . . The rule in Pensylvania (as stated by Judge McMichael in Jacobs v. Most Excellent Assembly Artisans Order of Mutual Protection, 9 Pa. Dist. Rep., 54), 'seems to be that, unless the words of the charter are clearly prohibitive or restrictive, the contract must be carried out as it was made.' "

In affirming the decision of the trial court the Superior Court said: "Our conclusions are, that the designation of a brother as a beneficiary is not prohibited by the Act of 1893." To the same effect is Donithen v. I. O. of F., 209 Pa. St., 170, 58 Atl., 142, by the Supreme Court of Pennsylvania, May 4, 1904. It will be observed that the enumeration of classes of beneficiaries in this Pennsylvania statute is identical with that of the Texas statute of 1899, except that the latter adds the words "at the time of his death."

In Sheehan v. Butchers, etc., Association, 142 Cal., 490, 76 Pac., 238, decided March 14, 1904, the Supreme Court of California construed the

order's charter and constitution, in connection with the statute of 1874, which required payment "to the nominee of any member." The constitution provided that the beneficiary should be "one or more members of his family, or someone related to him by blood, or who shall be dependent upon him." Held: The mother whom the member had designated as his beneficiary was entitled, as against his widow, to the proceeds of the certificate.

Lloyd v. Modern Woodmen of America, 113 Mo. App., 19, 87 S. W., 530, was decided May 16, 1905, by the St. Louis Court of Appeals. Under the Illinois statute of 1883 fraternal beneficiary associations were authorized to issue death benefit certificates payable to legatees of its members. (Laws 1883, p. 104.) In 1893 that law was amended, restricting death benefits to "families, heirs, blood relatives, affianced husband or affianced wife, or to persons dependent upon the member," and authorizing existing associations to accept the provisions of the statute as so amended. (Laws 1893, p. 130.) Appellee was incorporated under said statute of 1883, but duly accepted that of 1893, and afterward issued to Lloyd a certificate in favor of his wife, upon his application for membership which had not been formally approved by the local lodge, as required by the by-laws of the order.

Held: For want of compliance with the by-laws the certificate never became a binding contract of the order. The court evidently assumed that the member had a legal right to designate his beneficiary, and upon that point no question seems to have been raised.

American Legion of Honor v. Perry, 140 Mass., 589, 5 N. E., 636, decided in January, 1886, construed the Massachusetts statute of 1887, which provided for the incorporation and regulation of co-operative insurance companies, and which restricted them in the payments of death benefits to "assisting widows, orphans or other dependents of deceased members." Under it appellant was incorporated. Perry became a member, and designated his wife as his beneficiary. Her death followed, after which he died, leaving a will by which he undertook to substitute as his beneficiary one who did not belong to any of the three classes mentioned in the statute. The court held that "the corporation has no authority to create a fund for other persons than of the classes named. The corporation has power to raise a fund payable to one of the classes named in the statute, selected and appointed by the member during his life, and if no one is selected, it is still payable to one of the classes named." The court further held that fund not at all subject to testamentary disposition by the member. The decree awarded the fund to the mother. Said decision was cited and followed in Britton v. Supreme Council of the Royal Arcanum, 46 N. J. Eq., 102, 19 Am. St., 377, 18 Atl., 675, decided in June, 1890. See, also, Ryan v. Assn., 77 N. J. L., 399, 72 Atl., 53.

Catholic Order of Foresters v. Callahan, 16 N. E., 14, was decided March 6, 1888, by the Supreme Judicial Court of Massachusetts, a court of last resort. The statute permitted payment of death benefits to none but "widows, orphans, or other relatives of the deceased, or any

person dependent on deceased members." The court found that the association had not restricted the classes of beneficiaries allowed by law. Callahan, a member, designated his mother as his beneficiary. She was not then, nor afterward, dependent upon him for a support. The validity of her designation rested, therefore, solely upon the fact that she was a relative of the member. He subsequently married and his wife survived him. Held: The mother, and not the wife, was entitled to the benefit fund. The court said: "The deceased member had a right to designate as the beneficiary of the fund any person coming within the statutory provisions which enumerate those who may be thus designated. The law which permitted a relation, merely, not being necessarily a dependent, to be designated, was in force when he made his designation. The designation of his mother by the deceased was, therefore, one to which the association had a right to assent, as it did assent by accepting the order of the deceased. Legion of Honor v. Perry, 140 Mass., 580, 5 N. E., 634; Elsey v. Association, 142 Mass., 226, 7 N. E., 844; Briggs v. Earl, 139 Mass., 473, 1 N. E., 847."

By section 972, Revised Statutes of Ohio, 1879, it was provided that fraternal associations may provide "for the relief and aid of the families, widows, orphans, or other dependents of their deceased members," etc. In a case under that statute, Keener v. Grand Lodge, A. O. U. W., 38 Mo. App., 543, decided January 6, 1890, the Kansas City Court of Appeals held: "The beneficiaries of a fund, coming from these benevolent associations, must be of the class named in the law which brings the association into being, and the appointee must be one of that class"; citing National M. A. A. v. Gosmer, 43 Ohio St., 1, 1 N. E., 11; Presbyterian M. A. F. v. Allen, 106 Ind., 593, 7 N. E., 317, and other authorities.

Masonic Benefit Association v. Bunch, 109 Mo., 560, 19 S. W., 25, decided March 28, 1892, was by the Supreme Court of Missouri, a case which arose under a statute of that State, of 1874, authorizing incorporation of "associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof." The constitution of the association declared its object and intention to be "to give financial aid to the widows, orphans, heirs and devisees of deceased members, and for no other purpose whatever." The charter required that each member be furnished with a certificate of membership, and the by-laws provided that such certificate should contain the agreement between the association and the member. A certificate was issued to Louis W. Bunch, payable to his "heirs at law or legal representative," and delivered to his brother, David W. Bunch. Shortly afterward David caused this certificate, which had been assigned to him, to be returned to the association and a new one to be issued payable to "David W. Bunch, his brother, or legal representative of said David W. Bunch, on proof of interest." David took possession of it, and paid or caused to be paid all assessments against said certificate, down to the time of his death. Subsequent to the death of said designated beneficiary the member became desirous of changing the beneficiary, and made ineffectual

efforts to obtain possession of the certificate from Frank Bunch, his
nephew, a son of David Bunch, and thereafter made efforts to pay all,
and did pay many, of the assessments himself, the other assessments
being paid by the nephew.   After exhausting all methods of getting the
certificate and so notifying the secretary of the association, Louis W.
Bunch, made his will, which was duly probated, in which he designated
one Anderson as beneficiary, in trust, to collect from the association the
proceeds and benefits under said certificate, and to dispose of same as
follows:   First, to refund to the heirs of his brother, David Bunch, all
assessments paid by David or said heirs, or any of them, on said cer-
tificate; second, to pay to Nancy D. Peyton, the member's sister, her
heirs and assigns, $2500; third, to pay the balance, less costs and expenses
of executing the trust, to the member's sister, Amanda J. Peyton, her
heirs or assigns.   In a suit for proceeds of the certificate, the trial court
entered a decree in favor of Catherine Bunch, the widow, and the chil-
dren, of the deceased member, for the fund, from which the executor
appealed.   In deciding the case the court said: "The constitution of
plaintiff does not in terms provide for the designation of a beneficiary
at all.   It simply provides for a certificate of membership.   David was
neither an heir nor a legal representative of Louis, nor widow, nor
orphan, but. considering the whole statute together, it would have been
within the purport and intention of the corporation, if Louis was a
bona fide member of it, to have permitted him to designate David and
his heirs as his devisees.   The word 'devisee' here evidently has the same
signification as 'legatee.' "

Section 1408, Revised Statutes, 1899, of Missouri, limited payments
of death benefits by fraternal associations to "families, heirs, blood rela-
tives, affianced husband or affianced wife of or to persons dependent
upon the member."   The same provisions were carried into the amended
statute of Missouri of May 17, 1909.   Laws Mo., 1909, p. 372, and into
the Texas statute of 1899, the words "at the time of his death" being
added in the latter.   Construing that language, the Kansas City Court
of Civil Appeals, in Dennis v. Modern Brotherhood of America, decided
July 2, 1906, held that persons not within some one of the statutory
classes are barred, but treated the statute as permitting designation by
the member within the enumerated classes, and cited, approvingly, the
Keener Case, supra.

Sturges, Adm'r, v. Sturges, 126 Ky., 80, 102 S. W., 884, 12 L. R. A.
(N. S.), 1014, decided June 7, 1907.   In 1896 the Ohio Legislature
enacted a law regulating fraternal beneficiary associations, the sixth sec-
tion of which provided: "The payment of death benefits shall be con-
fined to the *family, heirs, relatives by blood, marriage or legal adoption,
affianced husband or affianced wife, or to a person or persons dependent
on the member.*"   92 Ohio Laws, p. 360.   Thereafter E. T. Sturges
became a member of an association operating under said statute.   Held:
"It was therefore competent for the association and the insured to have
contracted that L. M. Sturges, the half-brother of the insured, should
be the beneficiary of the policies, and while the insured had the right

to change the beneficiary, the one substituted must of necessity have belonged to the class permitted by the statute, else the attempted change would be void. It was not competent, then, for the insured to have designated his estate as the beneficiary of the policies. . . . The attempted change being void, the original designation, that of L. M. Sturges, the brother, remained unaffected by the void attempt." The words of this Ohio statute were very similar to those in our statute of 1899.

In Kentucky Masonic Mutual Life Ins. Co. v. Miller, Adm'r, 13 Bush (Ky.), 489, decided December 12, 1877, association was held bound by special charter provisions which declared that death benefits must go to the "widow and children" of the member, said provisions being unequivocal. But there the statute, unlike ours, connects the enumerated classes by the word "and," clearly leaving no room for choice by the association or any member. Instead of being in conflict with our views, this decision tends to confirm them, as illustrating the difference in meaning which exists between "or" and "and."

Prior to the adoption of our statute of 1899 several other States adopted similar statutes, which their courts construed to the same effect; but the foregoing will serve to illustrate the status when our statute was adopted. In reaching our conclusions we follow the established practice in this State, which has been to give to a statute borrowed by our Legislature from a sister State the settled construction which the courts of that State had placed upon it before its adoption here. In Munson v. Hallowell, 26 Texas, 481, 84 Am. Dec., 582, it was said: "It can not be doubted that when a statute which has been borrowed by us from England or some of the older American States has, previous to our enactment of it, received a settled and uniform construction by the courts of the country from which we have taken it, our courts will give to it a similar construction." See, also, City of Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 497, 91 S. W., 1, and cases cited. Moreover, in nearly every State where the question had arisen it had been held that the beneficiary fund constituted no part of the member's estate, and that he could not dispose of it by will unless the rules of the order expressly authorized him to do so, and that is yet the general rule of decision.

Under such circumstances, if our Legislature had intended to deny to future members of fraternal associations the right to designate beneficiaries, as formerly exercised, and to make this statute one of descent and distribution, that dual purpose would probably have been accomplished expressly and unequivocally, and that, too, in accord with our then existing general statute of descent and distribution. The construction which we place upon the statute in controversy is in line with decisions of various appellate courts of this and other States, rendered after said statute of 1899 took effect, in the light of which that statute was so amended, in 1909, as to expressly confer upon members the right of designation. Among such cases are these:

Coleman v. Anderson, 98 Texas, 570, 86 S. W., 730, decided April 17,

1905. In that case the member, P. B. Coleman, caused a death benefit certificate to be issued by the Knights of Honor, payable to his son, W. H. Coleman, who afterward assigned his interest therein to another to secure advances with which to pay assessments made by the order against the member. The son used the advances for that purpose. The rights of the assignee passed by deed of trust to his creditors and their assignees, against whom the member and his son, the designated beneficiary, brought suit for possession of the certificate. Judgment in the trial court was in favor of plaintiffs, but the Court of Civil Appeals for the Fourth District reversed it, and rendered judgment upholding the validity of said assignment of the benefit fund to the extent of such advances made; and its judgment was affirmed by this court, in an opinion by Associate Justice Williams, to the effect that, although the laws and rules of the order forbidding assignment or pledge of the benefit certificate as collateral left to the member no interest in the contract of insurance except the right to name or change the beneficiary within the limits of his family or dependents, and to the beneficiary no interest except the right of expectancy to the benefit fund in the event the member made no change in the beneficiary, such rights could be made the subject of contract by them with a third person, provisions of the by-laws of the order being for its own benefit, and said assignment, made with consent of the member, though in contravention of the by-laws, being good as between the parties. We quote from said opinion as follows: "Treating the certificate as affected by the only rules of the order introduced in evidence, as plaintiffs claim it should be treated, it invested the member with no property interest in the benefit. His only right, with respect to the benefit, was to appoint a beneficiary to receive the money at his death, and the beneficiary named could only be one or more among those designated by the laws of the order, namely: 'Members of our families and dependents,' and not creditors. The money to be paid could never go to him or to his estate, according to this rule; and, in this state of things, the authorities are ample to the effect that the only right of a member of such an order with respect to the benefit is that of appointment just stated."

And, in referring to certain expressions in Schonfield v. Turner, 75 Texas, 324, 7 L. R. A., 189, 12 S. W., 626, the opinion proceeds thus: "The decision does not conflict with the rule stated by us, that under the rules shown in this case the member, during life, has no property interest in the benefit, but only the power to appoint a beneficiary among the class designated by the laws of the order. That right P. B. Coleman still has, and there is nothing in this record to show that he is in anywise hindered or obstructed in its exercise by the defendant's possession of the certificate."

The date of issuance of the certificate was not disclosed by the record, but, as this court said, was "left to conjecture"; and the record was also silent as to whether the charter, constitution or by-laws of the order did or did not expressly authorize its members to designate or to change their beneficiaries. Inasmuch as it was shown that the order was per-

mitted by its charter to raise a fund "only for the protection of our families and dependents," the class of dependents not being limited to those occupying that status at the death of the member, as was required by our statute of 1899, we presume that the certificate issued before that statute took effect. The report of the case discloses no specific issue as to the right of the member to make such designation or change; but this court evidently assumed, and also expressly declared, that the member had both such rights. See Kelly v. Searcy, 100 Texas, 566, 102 S. W., 100.

Williams v. Fletcher, 26 Texas Civ. App., 85, 62 S. W., 1082, decided April 27, 1901, arose under a benefit certificate issued prior to the enactment of our statute of 1899, by the Fraternal Mystic Circle, which was incorporated under the laws of the State of Pennsylvania; but, the rights of the parties were determined under the laws of this State, in which said certificate was issued, and in which said society was doing business, the rule in such cases being well settled that the laws of the latter State govern. Dennis v. Modern Brotherhood of America, 119 Mo. App., 210, 95 S. W., 968. The object of the society, as expressed in its charter, was, among other things, "the collection of dues and assessments from its members; to provide for the payment to its members, or their families, widows, heirs, blood relatives, or other dependents, benefits in case of sickness, disability, or death of its members, in compliance with its constitution, laws and regulations." Its constitution provided for the payment of such sums of money to the family or heirs, widows, orphans, and dependents of deceased beneficial members. and to those of its beneficial members who may become permanently disabled by disease, accident or age." The by-laws provided that a candidate for beneficial membership shall embody in his petition the name or names and residences of the member or members of his family, or those dependent upon him, to whom he desires the benefit to be paid, subject to such further or other disposition of his benefits as he may thereafter direct, in accordance with the laws of the order, and the same shall be embodied in his benefit certificate; provided, the children or heirs of a member may be designated as such without naming them. The by-laws further provided for payment through an order upon the Supreme Treasurer in favor of the person or persons named in the benefit fund certificate, upon surrender thereof duly receipted, or upon proper vouchers in case of total disability. The society issued to George D. Fletcher, one of its members, a benefit certificate for a designated amount, payable to William A. Fletcher, his brother. George Fletcher subsequently endorsed and signed on said certificate a statement wherein he undertook to surrender and return it for cancellation, directing that a new certificate be issued to the minor, Frank Williams, who was not within any of the classes enumerated in said constitution, and presented said certificate, having said endorsement and request for such new certificate thereon, to the proper officer of the society, and upon being informed that his beneficiary must be either a relative or a dependent, attempted in writing to assign his interest in said certificate to said minor, and

to direct that his former beneficiary's name, William A. Fletcher, be erased from said certificate, and that the full amount called for by the certificate be paid to said minor. Said attempted transfer or re-designation remained in possession of George Fletcher until his death, and was afterwards found among his papers. No consideration was paid by the minor for said assignment, and the member himself paid all his membership dues. In the suit which involved the disposition of the benefit fund in question, the trial court rendered judgment in favor of William Fletcher, in whose favor the certificate was originally issued, which judgment was affirmed by our Court of Civil Appeals for the Second Supreme Judicial District in an opinion by Associate Justice Hunter, which closes as follows: "The learned district judge in his conclusions of law held, in effect, that while the transfer of the certificate made by George D. Fletcher was sufficient to pass the benefits of said certificate to Frank Rice Kyle Williams if he had been a person who, by the charter, constitution and laws of the association, could be a beneficiary in said certificate, yet, not being such, the transfer to him was void, and no right or interest in the fund passed thereby. Hence, William A. Fletcher, being a brother and heir of the deceased, and being named in the certificate as beneficiary, is entitled to the fund. We think his honor was correct in so holding, and his judgment is affirmed." It will be observed that while the decisions of both courts against said minor were based upon the fact that he was not within either of the classes of beneficiaries mentioned in the constitution, the judgment of each plainly recognized the right of the member to designate his beneficiary, within the circumference of such classes, and denied to the member's three brothers, who were also parties to the suit. The member, George Fletcher, lived and died a bachelor, and his father and mother were both dead when said benefit certificate issued. Under this constitution the three brothers, whose right of recovery was denied, if not members of the "family" of the deceased member were certainly among his "heirs," and were consequently entitled to share in the proceeds of the benefit certificate unless the designation by said member, George Fletcher, of his brother, William Fletcher, as his beneficiary, was valid and binding.

Flowers v. Sovereign Camp, W. O. W., 40 Texas Civ. App., 593, 90 S. W., 526, was decided November 18, 1905, by the Court of Civil Appeals for the Second Supreme Judicial District, the opinion being by Associate Justice Speer. The benefit certificate was issued November 23, 1898, in favor of the member's wife. He afterward attempted to change the beneficiary but failed to fully comply with the by-law on that subject, for which reason the benefit fund was awarded to the wife as the beneficiary originally designated by the member. The court did not discuss, but did assume, the validity of such original designation. The opinion does not disclose what classes of persons might be beneficiaries under the rules of the order, but it admitted liability and paid the money into court.

Vol. 106-16.

In Harris v. Harris, 44 Texas Civ. App., 152, 97 S. W., 504, decided November 7, 1906, the benefit certificate, which was issued August 9, 1898, was in favor of the member's wife, Mrs. Mattie Harris. The constitution of the order declared its objects to be, among others, to create a fund from which there shall be paid a designated sum "to the person or persons named in his certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers, sisters, or other blood relatives, or to persons dependent upon the member," following the statutes of Pennsylvania and several other States. It also provided that: "The name or names of the beneficiary or beneficiaries shall be written in every beneficiary certificate issued. In case such benefits are payable to one of the relations named herein, who shall at the time of the death of a member be also deceased, and no new designation has been made as hereinafter provided during life, the benefits shall be due and payable to the member's next living relation in the order named in this section. If there be no such relative surviving, then said benefits shall be forfeited to and remain in the beneficiary fund." It also provided a plan whereby a member might change his beneficiary. The wife died in 1899. The member made no other designation. The trial court rendered judgment in favor of the children against the widow of the member for proceeds of the policy, which the sovereign camp of the order had paid into court. The Court of Civil Appeals for the Third Supreme Judicial District, in an opinion by Chief Justice Fisher, reversed that decision, saying: "Under facts as stated, judgment below is erroneous. It should have been in favor of appellant, Mrs. Effie Harris. The original beneficiary having died, and the assured failing to make a new designation, the status of relationship existing at the time of the death of the latter would, under the provisions of the constitution of the order quoted, determine to whom the proceeds of the policy should go. The rule of kinship there ascertained places the wife first in order. Mattison v. Sovereign Camp, Woodmen of the World, 25 Texas Civ. App., 214, 60 S. W., 897. And, upon the death of the husband, the assured, no other beneficiary being selected by him, she stands first in order as the one selected as entitled to the proceeds." It will be observed that while the right of the member to designate a beneficiary was not directly in issue, that right was clearly recognized by the court.

Stahl v. Grand Lodge, A. O. U. W., 44 Texas Civ. App., 203, 98 S. W., 643, decided January 23, 1907, was a suit for part of the proceeds of a beneficiary certificate, the plaintiff being the widow of Louis Stahl, a member of defendant order, to whom it issued, in 1882, a certificate for $2000, payable at his death to his sisters, Catherine Grieb and Rosina Braun $700 each, and to his daughter, Catherine Stahl, who afterwards married Saures, $600. Rosina died before Louis Stahl died. The contest was over one-half of the amount directed in the certificate to be paid to Rosina and the entire amount so directed to be paid to said daughter of the deceased member, the association having paid that amount to said daughter. The constitution of the order pro-

vided: "Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, or someone related to him by blood, or who shall be dependent upon him. The judgment of the trial court was to the effect that the daughter, whether legitimate or not, was entitled to the money which had so been paid over to her, and that judgment was affirmed by our Court of Civil Appeals for the Fourth Supreme Judicial District, in an opinion by Associate Justice Fly, which declared said designation of the daughter valid, upon the double ground that she was related by blood to the member, Louis Stahl, and was also dependent upon him when designated as a beneficiary, and so belonged to two of the classes of beneficiaries enumerated in the constitution of the order. That opinion quoted, approvingly, from a case to which the same fraternal order was a party, Supreme Lodge, A. O. U. W., v. Hutchinson, 6 Ind. App., 399, 33 N. E., 816, as follows: "By the law of the order three classes of beneficiaries are established— members of the family, relations by blood, and those dependent on the member. Within these classes there is no limitation upon the right of selection by the member. So long as he keeps within these classes there is nothing to indicate that the order has any concern or interest in or control over the selection of the beneficiary."

Grand Lodge, Colored Knights of Pythias, v. Mackey, 104 S. W., 907, decided October 16, 1907, arose under our statute of 1899 and a benefit certificate issued June 18, 1904, to Barrett, drawn payable to Lelia Curry, as his affianced wife. He afterward surrendered said certificate and obtained a new one in favor of Mackey, who was not within any of the classes enumerated in the statute. In a suit for the benefit fund, judgment in the trial court was in favor of Mackey against the woman and the order. Holding that surrender by Barrett of the certificate ended the woman's interest as the designated beneficiary, whether the engagement between them had been broken off or not, and that as Mackey was not within any of the classes mentioned in the statute, he was not entitled to the fund, and that if said engagement had not been terminated prior to Barrett's death the woman, not as the beneficiary designated by Barrett, but as his affianced wife, was entitled under the statute to the fund, the Court of Civil Appeals for the Fourth Supreme Judicial District, in an opinion by Fly, Judge, after quoting from said statute of 1899 the paragraph which specifies the five classes of persons to whom such funds may be paid, and directs that, "should there be no one of the classes herein mentioned capable of taking the benefit at the death of the member, then the same shall pass as provided by the laws and rules of the association," said: "The rules of the association in this case provide that the benefits shall revert under such circumstances to the 'benefit fund of the endowment department.' It is clear that the classes named in the statutes, in the order named, are entitled to the benefits of the certificate of insurance in a fraternal beneficiary association when there is no designation of a beneficiary by the insured. He has the right to choose a member of either class named in the statute

as the beneficiary; but, in case he fails to name one of them, the benefit must be paid to those entitled to it under the statute in the order of precedence named in the statute." The expression to the effect that Barrett had "the right to choose a member of either class named in the statute as the beneficiary," appears to have been dictum; but it construed the statute as we do.

Grand Lodge, A. O. U. W. of Texas, v. Jones, 47 Texas Civ. App., 533, 106 S. W., 184, decided November 20, 1907, grew out of a benefit certificate issued by a fraternal beneficiary association which had been incorporated on January 2, 1900, under the laws of this State. The beneficiaries named in the certificate were two sons of the member, designated by him under the rules of the order which required that "each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, or someone related to him by blood, or who shall be dependent upon him. . . . Provided, further, that the designation shall not be in violation of or in conflict with any law regulating and defining fraternal beneficiary societies or other laws of the State, territory or province within which the Grand Lodge so issuing such certificate is situated." The rules of the order also stated how any member might change his beneficiaries. After various transactions involving an assignment of the certificate to secure advances, etc., and a subsequent change in the beneficiary, whereby Jones, as trustee, became beneficiary, an attempt was made by the member to again change the beneficiary so as to make his two grandchildren beneficiaries. The suit was filed by Jones as trustee to prevent the order from issuing a new certificate designating the grandchildren as such beneficiaries. It seems that no specific issue was made as to the validity of the member's original designation of beneficiaries, or as to his right, in the first instance, to change them, in manner and form as that was done, those rights apparently being assumed, by all the parties and by the trial and appellate courts, as existing. The controlling question in the case was as to the right of the member and the order to make the proposed change in beneficiaries in disregard of the rights of Jones, trustee, under an assignment to him of the certificate to secure certain advancements made for the purpose of paying assessments and to secure certain general creditors of the member. The trial court perpetually enjoined the order from making the proposed change in the certificate, but the Court of Civil Appeals reversed and rendered the case; holding that the association should issue the certificate naming the grandchildren as beneficiaries.

The opinion of the Court of Civil Appeals from which the questions now before us were certified, was delivered by Associate Justice Rice [47 Texas Civ. App., 540, 106 S. W., 186]. From it we make these excerpts: "It will be recalled that the laws of the order expressly grant the privilege to any member to change the beneficiary, only limiting the exercise of this privilege to the designation of some person or persons falling within the class named, towit, some member or members

of the assured's family, or someone related to him by blood, or who shall be dependent upon him, and further provided that such designation should not be in violation of or in conflict with any law regulating and defining fraternal beneficiary societies, or other laws of the State."
. . . Application for a writ of error was dismissed by this court for want of jurisdiction, the amount of the proposed new benefit certificate being less than $1000. We refer to said decision because it shows, at least inferentially, what all the parties and the District Court and the Court of Civil Appeals understood to be the meaning of our statute of 1899 with reference to the right of a member to designate a beneficiary. It should be remembered that the decision of the appellate court was rendered prior to the adoption of said statute of 1909.

Gray v. Sovereign Camp, Woodmen of the World, 47 Texas Civ. App., 609, 106 S. W., 176, decided November 23, 1907, was a case in which the member, Gray, caused the order to issue in his favor, on October 11, 1901, and consequently under our statute of 1899, a death benefit certificate in favor of Rosie C. White, as his cousin. Gray subsequently died, and the woman claimed the fund. The representation by the member that she was his cousin was false and fraudulent; she was not related to him by blood or marriage. It was found that the constitution and by-laws of the order "designate, define and restrict the class of beneficiaries who may participate in the beneficiary fund to the wife, children, adopted children, parents, brothers, sisters, or other blood relations, or to persons dependent upon the member." Held: Because of the fraudulent representations concerning the relation of the woman to the member, she could not recover. After stating the facts, and the requirements of said constitution and by-laws, the Court of Civil Appeals for the Fifth Supreme Judicial District, through Associate Justice Talbot, said: "In addition to the provision of appellee's constitution referred to, in which the classes of persons who could become beneficiaries in a certificate issued by it are designated, we have the statute passed by the Twenty-sixth Legislature of this State in 1899 (Sess. Acts 1899, p. 195, c. 115), which was in force at the time the policy sued on was issued, in which fraternal beneficiary societies, as created by the laws of this State or permitted to do business in this State, are defined, and the classes of persons who can receive benefits from them are designated. The classes in this statute are designated to be the families, heirs, blood relatives, affianced husband or affianced wife, or persons dependent upon the member at the time of his death. Thus, by the terms of this statute, as well as by the constitution of appellee's association, blood relatives could become lawful beneficiaries in certificates issued by appellee, and at the time the contract sued on was executed, appellant, if she had in fact been the cousin of the deceased, Gray, could have enforced said contract." Two cases are cited by that opinion: Koerts v. Lodge, 119 Wis., 520, 97 N. W., 163, and Supreme Council v. Green, 71 Md., 263, 17 Atl., 1048, 17 Am. St., 527. In the former case the Wisconsin court said: "It was falsely represented to respondent's officers that the beneficiary was one of the class for whose

benefit the mortuary fund was established," but the court found that representation false, and held the claim based thereon invalid. In the latter case the Maryland court said: "A relationship was stated to exist which on its face placed the beneficiary named within one of the classes provided by the corporation and allowed by the statute," and likewise found that such relationship did not exist, and that the beneficiary could assert no right under the certificate so fraudulently obtained. The statute therein referred to was one which as amended in 1882 authorized the formation of associations "for the purpose of assisting the widows, orphans, or other relatives of deceased members, or any persons dependent on deceased members."

In the light of the foregoing it seems clear that when inserting in our statute of 1909 a provision expressly authorizing a member to designate a beneficiary selected at his will from any of the enumerated classes our Legislature meant, not to confer a new right, or to establish a new rule of law, but merely to expressly declare the law upon that point as it existed aforetime. Not a single authority has been cited by the able and distinguished counsel for the widow in support of his contention. We presume he was unable to find any. In the opinion of the Court of Civil Appeals in this case, rendered by Associate Justice Jenkins, this statement appears: "If there is any decision of any court that treats language similar to that used in our statute as anything other than the designation of the classes from which the insured must select the beneficiary, appellee has not called the same to our attention, and our research has not enabled us to discover the same." After diligent investigation we concur in that statement, as we do in the conclusion therein announced upon the questions subsequently certified to us. The designation of the parents having been valid when and as made, neither the subsequent marriage of the member, nor the birth of his child, nor both, changed the beneficiary. Sheehan v. Butchers Pro. & Benev. Assn., 142 Cal., 487, 76 Pac., 240; Foresters v. Callahan, 146 Mass., 391, 16 N. E., 17. We accordingly answer the foregoing certified questions, in their order, thus:

First. The quoted words merely define and limit the classes from which a member may select a beneficiary, or beneficiaries, under a death benefit certificate. Said words do not in any sense constitute a statute of descent and distribution, and do not require payment of death benefits to be made in the order of said enumeration of classes, in disregard of the designation made by the member and shown by such certificate.

Second. Under the facts stated it was the duty of the Grand United Order of Odd Fellows to pay over to Thomas and Amanda Green said entire benefit fund of $500. Having already received half of it they are entitled to the other half from the registry of the trial court.

MR. CHIEF JUSTICE BROWN and MR. JUSTICE PHILLIPS, concurring in result, filed the following opinion:

We prefer to confine this decision to what we regard as the sole question presented by the certificate, that is, whether the effect of the

Act of 1899 was to deny to a member of a fraternal beneficiary association the right to designate a beneficiary, within the classification of persons enumerated in section 1, for the payment .of death benefits, without reference to other questions discussed in the opinion of Mr. Justice Hawkins.

We concur in the view that it had no such effect, since the provision in section 11 that the benefits to be paid by such an association should not be subject to the debts of "any beneficiary *named* in such certificate," was a clear recognition of such right.