## BILLS v. BILLS et al.  (No. 2024.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 20, 1918. Rehearing Denied Jan. 9, 1919.)

1. INSURANCE ⬦⟿783 — FRATERNAL INSURANCE—BENEFICIARIES—RIGHTS OF.

A beneficiary named in fraternal benefit certificate, providing for change of beneficiary, has no vested interest in the contract of insurance which will prevent the insured from changing any of the terms of the contract, but has a mere expectancy, which may be defeated by a change of beneficiary.

2. INSURANCE ⬦⟿784(6)—FRATERNAL INSURANCE—CHANGE OF BENEFICIARY.

A displaced beneficiary can question insured's method of making change of beneficiary only on the ground that it was legally insufficient to accomplish that purpose, where the insurer acquiesced therein, though the method did not follow the procedure provided in the certificate; those requirements being for the benefit of the insurer.

3. INSURANCE ⬦⟿784(6)—FRATERNAL INSURANCE—CHANGE OF BENEFICIARY.

Where a member of a fraternal insurance order who designated two beneficiaries secured the erasure of the name of one of them from the certificate, held that though such attempt to change beneficiaries was irregular and might give the insurer the right to deny liability, yet, where the insurer acquiesced in the change, the displaced beneficiary was entitled to no rights.

4. INSURANCE ⬦⟿784(7)—FRATERNAL INSURANCE—ASSENT TO CHANGE OF BENEFICIARY.

Where a member of a fraternal insurance order who had designated two beneficiaries at-

tempted to displace one by causing his name to be erased from the certificate, *held* that the insurer, by admitting its liability for the sum specified in the certificate, and paying the money into the registry of the court, ratified the certificate in its altered form; no new consideration being necessary.

5. INSURANCE 784(7)—FRATERNAL INSURANCE—CHANGE OF BENEFICIARY.

Where a fraternal insurer ratified a change of beneficiary by filing an answer admitting its liability, *held* that it could not thereafter arbitrarily repudiate its ratification so as to entitle the displaced beneficiary to share in the fund.

Appeal from Lamar County Court; Tom L. Beauchamp, Judge.

Action by E. B. Bills against the Mosaic Templars of America, who filed an answer interpleading J. H. Bills. From a judgment for plaintiff the defendant interpleaded appeals. Affirmed.

W. L. Hutchison, of Paris, for appellant.
Chas. Roach, of Paris, for appellees.

HODGES, J. This appeal is a continuation of a contest between E. B. Bills, the appellee, and J. H. Bills, the appellant, which involves the disposition of a benefit fund claimed from the Mosaic Templars of America upon the death of their deceased mother. The Mosaic Templars of America is a fraternal benefit society incorporated under the laws of the state of Arkansas. It has a constitution and by-laws for the government of its members. It also has a lodge system and a ritualistic form of work, issues policies of insurance on the lives of its members, and raises the benefit funds with which to pay such policies by levying assessments upon its members. In May, 1911, a policy of insurance was issued by this company to Martha Bills, the mother of E. B. and J. H. Bills, who was then a member in good standing of a local, or branch, lodge of the Mosaic Templars of America situated in Paris, Lamar county, Tex. At the time of the issuance of this policy Martha Bills designated upon the blank form provided for that purpose her two sons, E. B. Bills and J. H. Bills, as beneficiaries. Some time during the year 1915, and about a year before her death, Martha Bills, desiring to make a change in the policy, marked out the name of J. H. Bills, and caused it to be erased, leaving the name of E. B. Bills as her sole beneficiary. The secretary of the local lodge made this erasure at the request of Martha Bills, but without the knowledge of any of the officers of the grand lodge. In 1917 Martha Bills died, and E. B. Bills filed this suit against the Mosaic Templars of America in an effort to collect the sum of $300, the entire amount of the policy. J. H. Bills was made a party defendant, upon the ground that he was claiming an interest in that fund. The Mosaic Templars of America filed an answer, in which it admitted the execution and delivery of the policy to Martha Bills and its liability thereon to E. B. Bills or to E. B. Bills and J. H. Bills jointly, paid the sum of $300 into the registry of the court, and asked that the court determine who was the party to whom the fund belonged, and that it be discharged, with its costs. J. H. Bills filed an answer, in which he claimed that the effort of his deceased mother to eliminate him as a beneficiary under the policy was ineffectual for that purpose, because not made in conformity with the rules and regulations of the association.

There appears to be no dispute about the material facts of this case. The constitution and by-laws were referred to and made a part of the insurance contract. At the time the policy was issued the following by-law was in effect:

"*How Beneficiaries may be Changed.*—The National Grand Scribe is authorized to change the beneficiary named in a policy when requested in writing to do so by the insured, and no beneficiary shall have or obtain any vested interest in said policy until the same has become due and payable upon the death of said member, provided that at any time the order may by its by-laws limit the scope of beneficiaries within the classes named in law."

At the time the change was made the above had been amended, and the following was in effect:

"Sec. 1. The National Grand Scribe is authorized to change the beneficiary named in a policy whenever requested to do so by the assured under affidavit sworn to before a notary public, attested by the presiding officer and secretary; and no beneficiary shall have or obtain any vested interest in said policy until the same has become due and payable upon the death of said member; provided, that at any time the order may by its laws limit the scope of beneficiaries within the classes named in the laws of the states in which this order is operating."

The policy contained, among others, the following provision:

"Mosaic Templars of America, Martha Bills, of Evergreen No. 2186, located at Paris, state of Texas, was a financial member in good standing at issuing of this policy; if they should so continue until death, their widow, widower, mother, father, sister, brother, or relative by blood to the fourth degree, ascending or descending, to whom this policy may be willed or assigned shall be paid any sum not exceeding three hundred dollars," etc.

In addition to special findings made by the jury in answer to questions propounded, the court filed his conclusions, in which he says:

"Nowhere in the policy does it adopt the will or assignment as a part of the policy, or attempt to designate which relative named shall be the beneficiary. This matter is left wholly with the insured to will or assign."

After quoting section 1 of the by-laws, he continues:

"In the first place, no beneficiary is named in this policy. True, there is a blank for will or assignment attached to the policy, presumably for the convenience of the insured."

[1, 2] That beneficiaries in policies of this character have no vested interest in the contract of insurance which will prevent the insured from changing any of the terms of the contract is too well settled to require the citation of authorities. Theirs is but an expectancy which depends upon the policy remaining unchanged as to them till the death of the insured. In this instance Martha Bills had the right at any time, and for any purpose, to change the names of her beneficiaries. Having that right, her method of making a change, if acquiesced in by the insurer, can be questioned by a displaced beneficiary only upon the ground that it was legally insufficient to accomplish that purpose. The laws of this state do not prescribe any form or requirements to be followed in making such changes; that matter is usually provided for in the laws and regulations of the insurance orders themselves, as was done in this instance. But the adoption of such by-laws by insurance associations does not have the same effect as a public statute which expressly or impliedly prohibits any other form of changing beneficiaries. Such private regulations are not fundamental, but relate to matters of detail, which may be ignored or modified by the interested parties without violating any organic duty imposed upon the company by law. Those regulations are made for the convenience of the insurer and its policy holders and to protect the association from the claims of unknown beneficiaries. By referring to and making them a part of the contract of insurance the obligation of the insured to follow that method becomes contractual. Like all other contractual stipulations, those requirements may be waived by the insurer, for whose benefit it has been made. Splawn v. Chew, 60 Tex. 534.

[3] But the method adopted by Martha Bills for displacing one of her beneficiaries and increasing the interest of the other is materially different from that discussed in any case to which our attention has been called. Usually such irregular attempts are made by written designation in instruments distinct from the policy itself; and the proceeding, if ineffective, cannot impair the validity of the insurance contract. Here the attempt was by making an alteration in that portion of the policy which was essentially a part of the contract of insurance. If that alteration was immaterial, or one which Martha Bills had a legal right to make without consulting the insurance association, the appellee's right to the entire fund cannot now be questioned. On the other hand, if erasing the name of J. H. Bills was a material alteration, its legal effect was to either annul the contract of insurance or render it voidable at the option of the insurance association. If the contract was ipso facto annulled by the erasure, then neither of the parties to this contest is entitled to any part of the benefit fund. While, under that view of the case, the appellee may have recovered a judgment for something to which he had no right, the appellant lost nothing which he might lawfully claim, and is therefore not entitled to have the judgment reversed. If the alteration had the effect only of making the contract voidable at the option of the insurer, its ratification thereafter made it enforceable in its altered form. The intentional erasure of the name of J. H. Bills by his mother cannot be treated as a mere spoliation by a third person which either party to the contract had a right to disregard, in the absence of some agreement to thus ignore it. By that act Martha Bills evidenced a purpose to so alter the contract of insurance as to eliminate one of the original beneficiaries and correspondingly increase the interest of the other. That contract, if thereafter enforceable, was enforceable in its altered form. For if the alteration was a material one the contract was not enforceable in any form till assented to by the insurer, and when ratified it became the only obligation.

[4] The next question is, Did the Mosaic Templars of America assent to, or ratify, the altered policy? After receiving notice that the contract had been altered, the Mosaic Templars of America could claim no greater right than that of treating the contract of insurance as at an end, and refuse to pay the benefit fund to any one. Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56; Baldwin v. Haskel Nat. Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178. When called upon to pay that fund after the death of the insured, the Mosaic Templars of America, with full knowledge of the alteration, admitted its liability for the entire sum claimed, paid the money into court, and asked to be discharged with its costs. Under the authorities that follow, that act and pleading were sufficient to constitute a ratification of the policy in its altered form. Matson v. Jarvis, 63 Tex. Civ. App. 376, 133 S. W. 944; Hall v. Allen, 75 Miss. 175, 22 South. 4, 65 Am. St. Rep. 601; Adams v. Grand Lodge, 105 Cal. 321, 38 Pac. 914, 45 Am. St. Rep. 45; Lake v. Minnesota, etc., Ass'n, 52 Am. St. Rep. 562; 8 Elliott on Contracts, § 2018. It was not necessary that

there be a new consideration. 2 Cor. Juris, pp. 1255, 1256, and notes.

[5] It is true that the Mosaic Templars of America filed in the court below an amended answer, in which it demurred to the petition of E. B. Bills, and pleaded that because of the erasure the policy was void and unenforceable, and, further, that Martha Bills had not pursued the method provided for in the by-laws of the order in changing the name of her beneficiary. This amended answer appears to have been filed nearly four months after the filing of its original answer tendering payment, and after the contestants had joined issue in the case. The Mosaic Templars of America did not in this amended answer ask to withdraw the fund which it had theretofore paid into court, or claim that it had in any manner acted under a misapprehension of the facts. The apparent purpose of the amended answer was to insist that the fund should be equally divided between the claimants according to the original provisions of the policy. Having once performed acts sufficient to constitute a ratification of the contract in its altered form, the Mosaic Templars of America could not, without showing that it had been misled, escape the legal consequences of that conduct. It could not arbitrarily repudiate what it had once fully ratified. The court sustained a motion to strike out that amended answer, and the Mosaic Templars of America has not appealed from that ruling. J. H. Bills has no right to complain of it.

The judgment is affirmed.